IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

WASHINGTON PERRY,

    Petitioner,

v.

LISA LATOYA CHANG,

    Respondent.

Case No. 23-cv-62361

**PETITION FOR RETURN OF MINOR CHILDREN
PURSUANT TO THE HAGUE CONVENTION**[1]

Petitioner, WASHINGTON PERRY ("Petitioner"), respectfully petitions this Court as follows:

## I. INTRODUCTION

1. This action is brought by Petitioner under the United Nations Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11670, 19 I.L.M. 1501, (the "Hague Convention") and the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq*. ("ICARA"). The Hague Convention came into effect in the United States on July 1, 1988, and has been ratified between the United States, Jamaica, and over 80 other Contracting States.

2. The Hague Convention and ICARA have two overarching purposes: (1) to "secure the prompt return of children wrongfully removed to or retained in any Contracting State" and (2) to "ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other contracting States." **Exhibit 1**, Hague Convention, Art. 1(a)-(b).

---

[1] A verification in support of the Petition will be filed separately at a later date.

3. The Hague Convention and ICARA provide a rapid remedy for the left-behind parent to return the Child to the status quo before the wrongful removal or retention. *See id.*, Art. 11 ("The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.").

4. One goal of the Hague Convention and ICARA is to prevent forum shopping with the intent of returning the child to his or her home jurisdiction so that a custody determination can be made there. To that end, courts outside the child's original home country are precluded from considering the merits of the underlying custody dispute.

5. Petitioner is a citizen and resident of Jamaica and the father of seven year-old Z.L.W. and four year-old Z.W.P. (the "Children").[2] Petitioner was the Children's primary caretaker and provider at the time of removal from Jamaica.

6. Respondent is a citizen of Jamaica who, upon information and belief, currently resides in Tamarac, Florida with her partner and her aunt. She is the Children's mother. Without Petitioner's consent or acquiescence, Respondent wrongfully removed the Children from Jamaica and brought them to the Southern District of Florida under false pretenses.

7. Through this action, Petitioner seeks to secure the return of the Children to their habitual place of residence in Jamaica as required by the Hague Convention and ICARA.

## II. PARTIES, JURISDICTION, AND VENUE

8. Petitioner is a citizen and resident of Jamaica.

9. Respondent is a citizen of Jamaica who, upon information and belief, presently resides with the Children in Broward County, Florida.

---

[2] Pursuant to Federal Rule of Civil Procedure 5.2(a)(3), only the initials of the minor Children are provided. The undersigned can provide the full name of the minor Children in a sealed filing or *in camera*.

10. This Court has jurisdiction over this case pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

11. Venue is proper pursuant to 22 U.S.C. § 9003(b) and 28 U.S.C. § 1391(b) because, upon information and belief, Respondent and the Children are residing in the Southern District of Florida, specifically in Broward County, Florida.[3]

### III. STATEMENT OF FACTS

#### A. The Children's Country of Habitual Residence is Jamaica.

12. Petitioner and Respondent are the Children's parents. They were never married.

13. Z.L.W. was born in Kingston, Jamaica on August 12, 2016. Z.L.W.'s birth certificate identifies Petitioner as the father and Respondent as the mother. A redacted copy of Z.L.W.'s birth certificate is attached hereto as **Exhibit 2**.

14. Z.W.P. was born in Kingston, Jamaica on April 26, 2019. Z.W.P.'s birth certificate identifies Petitioner as the father and Respondent as the mother. A redacted copy of Z.W.P.'s birth certificate is attached hereto as **Exhibit 3**.

15. Petitioner and Respondent's tumultuous relationship began in 2016. They resided together with the Children in Jamaica until 2019 when they separated and Respondent moved out of Petitioner's home.

16. When Petitioner and Respondent separated in 2019 and began living in different homes, they both still resided in Jamaica, as did the Children. The Children mostly resided with Petitioner in his home, and he was their primary caretaker.

---

[3] The undersigned can provide the minor Children's known address in Broward County, Florida in a sealed filing or *in camera*.

17. Prior to their removal from Jamaica, the Children were enrolled in school in Jamaica and participated in extracurricular activities in Jamaica, such as playing in youth soccer leagues. Most of their relatives, including Petitioner and the Children's grandparents, as well as their friends remain in Jamaica.

18. Prior to their removal, the Children had not resided anywhere aside from Jamaica.

B. **The Children Were Removed to the United States Without Petitioner's Consent.**

19. Petitioner did not consent or acquiesce to the Children's removal by Respondent to the United States in any way.

20. On several occasions, both Respondent and the aunt with whom she presently resides had previously asked Petitioner to allow the Children to live in Florida with Respondent's aunt. Petitioner repeatedly denied their requests.

21. First, when Z.L.W. was born, Respondent asked Petitioner if Z.L.W. could move to Florida to live with Respondent's aunt. Each time, Petitioner told Respondent that he did not consent to Z.L.W.'s removal from Jamaica to reside in the United States with Respondent's aunt or anyone else.

22. Then, when Z.W.P. was born, Respondent's aunt was in Jamaica for the birth and made comments about taking Z.L.W. to Florida and leaving Z.W.P. with Petitioner in Jamaica. Petitioner again rejected the idea of Z.L.W.'s removal from Jamaica.

23. Around the summer of 2021, Respondent asked permission to bring the Children to Florida for a trip to Disney World from August 10, 2021 for a short period of time. Petitioner agreed to allow the Children to travel to Florida with Respondent solely for purposes of visiting Disney World and with the understanding that they would return to Jamaica immediately upon the completion of the short trip and prior to the start of the new school year in Jamaica.

24. Indeed, Petitioner expected Respondent to return to Jamaica with the Children because they were supposed to begin the new school year in Jamaica. Shortly before the removal, Petitioner, at Respondent's request, had registered the Children for the new school year and paid all of the associated school fees. Petitioner had also purchased new clothing and school supplies for the Children in anticipation of the imminent start of classes.

25. Petitioner did not know that Respondent brought the Children to Florida with the intent of remaining with them in Florida indefinitely until approximately two weeks after Respondent and the Children left Jamaica. Petitioner ran into one of Respondent's coworkers who informed Petitioner that Respondent had resigned two weeks prior, sold her car (which Respondent had previously told Petitioner was at the garage for repairs), and would not be returning to Jamaica. Around the same time, Petitioner encountered one of his friends who told Petitioner that Respondent had removed a tenant from her home. It was at this point that Petitioner realized that Respondent may not be returning the Children to Jamaica.

26. Petitioner immediately attempted to contact Respondent and the Children, but he was not able to get through until about a week later. During that conversation, Respondent stated that neither she nor the Children would be returning to Jamaica as payback against Petitioner for kicking her out of his home (which he had not done) and that Petitioner would not be seeing the Children again. Petitioner continued to plead with Respondent to return the Children to Jamaica, but she refused.

27. As a result, Petitioner attempted to exercise his options to secure the return of his Children to Jamaica.

28. Shortly after getting in contact with Respondent, Petitioner filed a police report in Jamaica to report Respondent's abduction of the Children.

29. Subsequently, Petitioner went to the Child Protection and Family Services Agency ("CPFSA") to report Respondent's unauthorized removal of the Children from Jamaica. CPFSA provided Petitioner with information for the submission of an application under the Hague Convention.

30. Petitioner also consulted with an attorney in Jamaica, who advised him to file a legal action in the United States under the Hague Convention.

31. Petitioner then spoke with an officer at the Jamaica Passport, Immigration and Citizenship Agency. The immigration officer also advised Petitioner to file a legal action in the United States.

32. Accordingly, Petitioner presented an application under the Hague Convention with the Jamaica Central Authority ("JCA") on April 7, 2022. The JCA referred this matter to the United States Department of State, who referred this matter to Petitioner's counsel in September 2023.

33. On August 31, 2022 and October 21, 2022, as part of the processing of Petitioner's application for assistance under the Hague Convention, the U.S. State Department mailed a letter to Respondent requesting that she work with Petitioner to resolve the Parties' dispute or otherwise voluntarily return the Children to Jamaica. Copies of those letters are attached hereto as **Exhibit 4**. Respondent did not respond to either letter.

34. Moreover, since the removal, Petitioner has been persistent in his efforts to communicate with the Children and ensure their well-being.

35. In or about February or March 2022, Petitioner traveled to Florida with a visa to see the Children and make sure they were safe and well. When Petitioner arrived to the known address for Respondent, Respondent's aunt opened the door and refused to let him see the Children and stated that they were not home. Petitioner spoke with a police officer who was driving by the

home at the time. When Petitioner returned to the home, he was allowed to see the Children but Respondent and her aunt supervised the visitation and continued to restrict Petitioner's ability to spend quality time with the Children.[4]

36. Since the removal, Petitioner has been sending money to Respondent for the Children's expenses, including a phone so he can contact the Children. He also purchased electronic tablets for the Children's schooling.

37. Respondent will only allow Petitioner limited access to the Children by phone, and even further, only when Petitioner sends money to Respondent.

38. Petitioner has only been allowed to speak with the Children about once a month. The conversations are by video call during which the Children have expressed their desire to go home to Jamaica to be with their father. Whenever the Children begin making such statements, Respondent takes away their phone and tells Petitioner that the phone is having technical difficulties.

39. Petitioner has also attempted to communicate directly with Respondent about the Children's well-being, though his communications are largely ignored. Despite multiple requests, Respondent refuses to inform Petitioner about the Children's health, school enrollment, grades, participation in extracurricular activities, or schedules.

40. Petitioner has also offered to pay for the Children's return to Jamaica for the holidays, but Respondent has rejected Petitioner's offer.

41. It is unknown whether Respondent or the Children have legal immigration status.

---

[4] Petitioner's visa has since expired and he is in the process of renewing it so he can travel to Florida and see his Children again.

## C. Respondent's Removal Violated Petitioner's Rights of Custody Under Jamaican Law.

42. The laws of the country of the Children's habitual residence are used to determine rights of custody.[5]

43. Petitioner has rights of custody under Jamaican law.

44. Jamaican law presumes that both parents have custody of their child and a parent does not automatically cease to have custody if the child is no longer residing with them. Section 2(4)(a) of the Child Care & Protection Act (CCPA), 2004 states:

> Any person who is the parent or legal guardian of a child, or who is legally liable to maintain the child, shall be presumed to have the custody of the child, and as between father and mother, neither shall be deemed to have ceased to have such custody by reason only that the father or mother…does not reside with, the other parent and the child.

Furthermore, the Children (Guardianship and Custody) Amendment Act, 2017, which was enacted in Jamaica simultaneous with Jamaica's accession to the Hague Convention, include "…rights relating to the care of the person of a child and in particular, the right to determine the child's place of residence." The relevant excerpts from these provisions of Jamaican law are attached hereto as **Exhibit 5**.

45. Respondent violated Petitioner's custody rights under Jamaican law when she moved to Florida with the Children without Petitioner's consent or acquiescence. In Jamaica, the Children resided primarily with Petitioner and he was their primary caretaker. Petitioner repeatedly told Respondent and her aunt that he would not allow the Children to permanently reside in Florida. Petitioner only allowed the Children to travel with Respondent to Florida for a short vacation trip

---

[5] To determine whether a party has "rights of custody" "courts must apply the laws of the country of the child's habitual residence to determine if the non-removing parent had 'rights of custody.'" *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 343 (5th Cir. 2004).

8

(so the children could enjoy Disney World) with the intent that they would return to their home in Jamaica.

46. No court order has been entered in Jamaica limiting Petitioner's rights of custody.

### D. Petitioner was Exercising His Rights of Custody at the Time of Removal.

47. As previously stated, Petitioner was exercising his custody rights prior to the Children's removal.

48. The Children resided primarily with Petitioner. Petitioner accompanied the Children to most of their doctor's visits and paid most of their medical expenses. Petitioner also paid for the Children's living expenses such as education costs, food, clothing, and school supplies. During the week, Respondent would drop the Children off at school in the mornings and Petitioner would pick them up in the afternoons and feed them. Petitioner would assist the Children with their homework and take the Children to soccer practice. The Children spent most weekends with Petitioner.

49. Prior to the removal, the Children expressed to Petitioner that they would prefer to stay with him.

50. In short, Petitioner had a loving relationship with the Children and also provided for them financially. The Children also spent not only a significant period of time but the majority of their time with Petitioner.

### IV. CAUSES OF ACTION

### COUNT I – RELIEF UNDER THE HAGUE CONVENTION

51. Petitioner incorporates by reference all facts and allegations set forth in the foregoing paragraphs and further alleges the following.

52. The Hague Convention and ICARA apply in this case because the Children are less than sixteen-years old and the United States and Jamaica are both "Contracting States" under the Hague Convention. Ex. 1, Hague Convention, Arts. 1, 4.

53. The Hague Convention and ICARA require the return of children wrongfully removed to or retained in the United States to their home country. *See id.*, Art. 12.

54. The removal or retention of a child is wrongful when (a) it is in breach of the left behind parent's rights of custody in the country where the child was habitually resident before removal and (b), at the time of the removal or retention, the left-behind parent was actually exercising those rights, either jointly or alone, or would have exercised those rights but for the removal or retention. *Id.*, Art. 3.

55. Rights of custody may arise by operation of law or by reason of a judicial or administrative decision. *Id*. Rights of custody include rights relating to the care of the child and, in particular, the right to determine the child's place of residence. *Id.*, Art. 5(a).

56. As stated above, the Children were habitual residents of Jamaica prior to their removal, and thus Jamaican law governs Petitioner's rights of custody.

57. As stated above, Petitioner had rights of custody under Jamaican law, was exercising his rights of custody prior to Respondent's wrongful removal of the Children to the United States, and would have continued exercising those rights but for Respondent's removal and retention of the Children.

58. Respondent, therefore, violated the Hague Convention and ICARA by breaching Petitioner's rights of custody.

**COUNT II – PROVISIONAL REMEDIES UNDER THE HAGUE CONVENTION**

59. Petitioner incorporates by reference all facts and allegations set forth in the foregoing paragraphs and further alleges the following.

60. Pending further order or hearing in this Court, it is requested that this Court issue an immediate order prohibiting the Children's removal from the jurisdiction of this Court, taking into safe-keeping all of the Children's travel documentation, and setting an expedited hearing on the Petition for Return of the Minor Children to Petitioner.

## V. NOTICE

61. Pursuant to 22 U.S.C. § 9003(c), Respondent shall be given notice of this Petition in accordance with Rule 4 of the Federal Rules of Civil Procedure.

## VI. RELIEF REQUESTED

**WHEREFORE**, Petitioner Washington Perry prays for the following relief:

a) An immediate temporary restraining order prohibiting the removal of the Children from the jurisdiction of this Court pending a decision on the merits of this Petition, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the Children from the jurisdiction of this Court pending a determination on the merits of this Petition;

b) An expedited hearing on the merits of this Petition;

c) An order that Respondent show cause why the Children should not be returned to Jamaica and why such other relief requested in this Petition should not be granted;

d) A final judgment ordering that the Children be returned to Jamaica, where—consistent with the Hague Convention—an appropriate custody determination can be made by a Jamaican court under Jamaican law;

e) An order requiring that Respondent pay Petitioner's expenses, including court costs, legal fees, or other care during the course of proceedings in the action, and transportation costs related to the return of the Children;

f) An order that Respondent sign all necessary forms and make necessary arrangements to allow the Children to return to Jamaica; and

    g) Any such further relief as may be just and appropriate under the circumstances of this case.

                                                  /s/ *Morgan L Swing*
                                        Michael J. Shuman, P.A. (17053)
                                        E-mail: mjshuman@duanemorris.com
                                        Morgan L. Swing (17092)
                                        E-mail: mlswing@duanemorris.com
                                        Carolina Goncalves (124570)
                                        E-mail: cgoncalves@duanemorris.com
                                        DUANE MORRIS LLP
                                        201 South Biscayne Boulevard, Suite 3400
                                        Miami, FL 33131-4325
                                        Telephone: +1 305 960 2200
                                        Fax: +1 305 960 2201

                                        *Attorneys for Petitioner Washington Perry*

Dated: December 15, 2023